The next case is number 121297, Ferris, Thomas & Zweig v. Esposito, Agenda Number 8. Is the appellant ready? You may proceed. Good morning, Justices. May it please the Court, my name is Amanda Hamilton and I represent the defendant appellant in this case, Mr. Anthony Esposito. You'll have to excuse me, Your Honors, this is my first time here. I'm a little nervous, but it is an honor to be here. This case is about priorities and specifically whether this State and the Illinois Rules of Professional Conduct place a greater value on a client's interest in being fully informed as opposed to an attorney's interest in obtaining a referral fee. The First and Second Districts have differing viewpoints as to what Rule 1.5 of the Illinois Rules of Professional Conduct require in terms of having an enforceable referral fee agreement. Specifically, the First District has held that the term, each lawyer assumes joint financial responsibility for the representation, must be in writing, whereas the Second District in this case has held that it is not. The underlying trial court in this case granted a motion to dismiss, finding that the lack of that term being in writing resulted in the underlying referral fee contracts being unenforceable. The trial court then subsequently denied the plaintiff's motion to reconsider. The Second District then reversed and found that the term did not need to be in writing. I humbly submit that the Second District erred in their interpretation and that an interpretation of Rule 1.5, which requires the term joint financial responsibility to be made to the client in writing, better serves the spirit of the Rule as well as Illinois' history and public policy of protecting the client's interests and placing those interests and rights above an attorney's financial gain. In its opinion, the Second District focused on three primary points, the first of which being the last antecedent rule. As we discussed in our brief, we don't believe that that rule really applies because, first of all, it doesn't appear to be ambiguous, the rule itself. And secondly, even if this court were to apply the last antecedent rule, a review of the rule in its full context, including the corollary clauses that this court previously discussed in the Enri E. B. case, the joint financial responsibility term is such an essential part of the rule itself that it's not too remote from the first clause, so as to make the last antecedent rule apply. We believe that the term is necessarily part of the arrangement. A review of the rule demonstrates that in subparagraph 1 is where each lawyer assumes joint financial responsibility for the representation. Subpart 2 then says the client agrees to the arrangement, including the share each lawyer will receive, and that the agreement is confirmed in writing. We believe that the term joint financial responsibility is necessarily part of the arrangement and the agreement that must be confirmed by the client in writing. Ms. Hamilton, does the phrase same legal responsibility and joint financial responsibility mean the same thing? Your Honor, there's been a couple cases, obviously, where that's been discussed. I believe Kansas had one, and there's some other states that have made that distinction. Illinois is somewhat unique in that this court specifically found to put joint financial responsibility in the rule, as opposed to just joint legal responsibility. So I think that that was intentional in that the state, more so than other states, wanted to make it clear to the client and to the attorneys that each attorney being part of the representation was going to be financially responsible in terms of legal malpractice cases, damages, other situations where if one attorney is on the hook for the client and is going to be paying that client damages, so is the other attorney. Do you think that lawyers could craft an agreement that says that there would not be joint financial responsibility and they would not be bound by this rule? I don't think that such agreement would be enforceable. I think it would be completely contrary to the rules set out by this court and by Illinois' public policy in general. I think that the purpose of our rules is to demonstrate that the client's interests always come first. They come above the attorney's interests, and they certainly come above the attorney's financial interests. I also believe that the purpose of referral fee agreements, obviously, there's a long history. In a situation where there's a referral-only fee agreement, I believe for a long time those were prohibited as being against public policy. When they were permitted, they were permitted under a very specific set of circumstances. And the focus was always to benefit the client, not to benefit an attorney by establishing networks or relationships where they can then obtain monetary gain for sending certain cases to certain people. The client's interest should be paramount in this consideration. How should we define arrangement and agreement, the two terms used in 1.5e paragraph 2? I think that those two terms should be interpreted in a way that encompasses the entire spirit of the rule. So that means that I humbly submit that the best interpretation of the rule is one that errs on the side of full disclosure to the client, where the client has all the information that if both attorneys are assuming joint financial responsibility, that both attorneys owe that client a duty because both of those attorneys are going to be receiving a fee, and this is how much. I think that that interpretation advises the client straightaway up front of what their rights are, that both sets of attorneys are going to owe them a duty of care. Not just the attorney who's going to be primarily handling their matter, but also the attorney who is going to be receiving a monetary benefit. In exchange for receiving that monetary benefit, that referring attorney also must shoulder some of the risk and responsibility to that client for that client's matter. Next, Your Honors, I believe that the Second District also erred in finding that the interpretation of Rule 1.5 that requires the provision to be in writing doesn't concern the client. As what I've just started to discuss here, I think that it is extremely important that the client is advised of his or her rights and that those rights include, if necessary, the ability to pursue the original referring attorney for any actions of legal malpractice or any other actions that may arise depending on the outcome of the underlying matter. There is an argument made in the briefs that simply by having the attorney's names on the contract, that a client would necessarily know that each set of attorneys would owe him or her a duty, and I don't believe that's the case. And I believe that that was also evidenced by some of the arguments that were made in the briefs that a referring attorney is not expected to make sure that the attorney who is handling the matter complies with deadlines. I believe that's absolutely what is required. I think that if you are going to be referring a case out and receiving a fee for that case, you are absolutely required to make sure that that case is handled in a way that best serves the client. I think that a client would be less concerned with the amount each attorney is going to receive as opposed to making sure that the client understands that each set of attorneys owes him or her a specific duty and is liable to them for damages. What then do we do following up on Justice Garment's question regarding arrangement and agreement? Subparagraph 2 says the client agrees to the arrangements, including the share each lawyer will receive. That's specifically mentioned. How do we treat that in light of your argument that you think it's more important than the joint financial responsibility? I think that both terms should absolutely be required to be in writing. The client should be advised in the agreement that both attorneys are assuming joint financial responsibility, that both attorneys are going to be sharing a fee. This is the percentage or this is the amount that each attorney is going to be receiving, and that the client has a right to review any billings. If they have any questions, they can talk to either set of attorneys. I think erring on the side of full disclosure. I understand that you argue that, but how do you get around the language when it says the arrangements would seem like it might encompass all of subparagraph 1, but then it specifically says including the share each lawyer will receive in that agreement. So that has to be in the agreement. Why isn't the other mentioned there? I think that the agreement does not only refer to the share each lawyer will receive. And I think that that makes sense because the other portion of Rule 1.5, which is listed even above in Subsection 1, necessarily has to be in the retainer agreement for the client to know and understand and accept. If the agreement, are you contending the agreement is invalid because that language is not in? I'm contending the agreement is unenforceable because the language is not in there. Is your client entitled to a fee at all? I believe so, yes, Judge. That certainly is not the specific issue that we were briefing today, but that is my position that our client would be entitled to a fee from the underlying client. That would certainly be a separate issue, and I'm not sure that the referring attorney would have standing to raise those types of arguments on behalf of the underlying client, but I'd be certainly happy to submit a supplemental brief on that issue if this Court would be interested in hearing those arguments as well. The last major issue before the Second District, in their opinion, they argued as to whether or not Rule 1.5 should be applied retroactively, and this actually presents, Your Honor, second district split. The First District has found that Rule 1.5 should be applied retroactively, whereas the Second District has found substantive versus procedural changes which should dictate whether Rule 1.5 is applied retroactively. Once again, I submit that the First District has the correct interpretation, which is now this is the second time I'm taking a stance against my home district, so hopefully that doesn't get me into too much trouble. But I believe that this Court in Dowd and Dowd v. Gleeson really explained in a clear way why Illinois Rules of Professional Conduct should have retroactive effect. Now, in Dowd and Dowd v. Gleeson, this Court examined Rule 5.6, which was the restrictive covenant provision, and acknowledged, yep, this interpretation, this change, applying it retroactively might have some very big impact, but that comes secondary to the public policy that's served. And I think the same is true in this case, that applying Rule 1.5 with this interpretation, where everything has to be in writing and everything has to be disclosed to the client, better serves public policy, and therefore should be applied retroactively, just as Rule 5.6 was. I think on page 1 of your brief you indicate that it's better public policy to include this language in the contract, and the contract is void. Are you arguing that there's no joint financial responsibility if it is not in the contract? No, I'm arguing that simply that the client needs to be made aware of that in order for the contract to be enforceable by the referring attorney seeking to collect fees. In sum, Your Honors, I believe that referral fee-only agreements should be examined very closely to make sure that they benefit the client and that the client's interests are always protected above any monetary gain by the attorney. And if there are no other questions, that concludes my remarks. No questions, thank you. May it please the Court, my name is Saul Farris of Farris Thompson & Zweig. I represent the plaintiff in this matter. Rule 1.5 requires the assumption of joint financial responsibility, not a written declaration of joint financial responsibility. The foreman decision effectively judicially amends Rule 1.5 improperly. Rule 1.5 is not the rule against perpetuities. It's not complex. It's not particularly cryptic. It's very straightforward in its language. Justice Thomas, in a 2010 opinion, Papal v. Santiago, No. 107391, gives us instruction on how to interpret a rule of professional conduct. The Court in that case found it useful to examine the context of the rules as a whole. And the Court stated that it is well settled that by employing certain language in one instance and a wholly different language in another instance, the legislature indicates that different results were intended and deliberate. So is there another rule of professional conduct which would shed light on the drafter's intent? I submit there is. Rule 7.3, which deals with the solicitation of clients, states every written communication from a lawyer soliciting professional employment shall include the words, quote, advertising material. What is my point? My point is that if the drafters intended specific language to be made part of a rule, they will so state. They did not so state in Rule 1.5. As Justice Thomas pointed out in the Santiago decision, the Court should presume that that omission was deliberate. To extrapolate the Santiago analysis, it's also useful to look at the predecessor rule of 1.5. It's very illuminating. That rule was effective from 1990 to 2000, and it is drafted quite differently than the present rule. It states, quote, lawyers from different firms shall not divide fees unless the client consents to employment of the other lawyer by signing a writing which discloses, number one, a division of fees will be made, number two, the basis of the division, and number three, the responsibility to be assumed by the other lawyer. So arguably the predecessor rule, 1.5, was much clearer in what the written requirements under 1.5 were. Notably absent from the list of written requirements in the predecessor rule is joint financial responsibility. The drafters could have amended those lists of written requirements in the present version of the rule to include joint financial responsibility, but they didn't. Again, I would ask that the Court presume that omission was deliberate. Even if joint financial responsibility language was required to be expressed in a referral-only contract, it's unlikely that this obscure legalese would enlighten a client reading the contract in any meaningful way. As a matter of fact, the trial attorney in Ferris-Thompson's wife, one in this case, misunderstood the meaning of joint financial responsibility. He argued, and I cited the transcript. It's part of the appendix to the plaintiff's brief. He believed it referred to the contribution of court costs. And he argued that since Ferris-Thompson and his wife didn't contribute any court costs to the defendant, 1.5 was not complied with. This is in, as the Court may recall, this is our second go-round with the same parties. I was here two years ago arguing a jurisdictional issue. The defendant didn't want to pay fees saying that I filed in the wrong court. And this court decided in the plaintiff's favor that the circuit court did have jurisdiction. So in that case, and I'm about to tie this into a collateral estoppel argument. In that case, 1.5 was argued that the verdict should be directed because the plaintiff failed to comply with 1.5 because we didn't contribute to court costs. The trial judge correctly dismissed that argument, rejected it, and refused to direct the verdict for the defendant. The defendant chose to appeal only the jurisdictional issue. They could have appealed the 1.5 issue, but they did not. So why am I here? I'm honored to be here, but I shouldn't be here. And the reason I shouldn't be here is because we asked the trial judge in this case to stop the defendant from raising this issue again. You cannot have a second bite at the apple. Judicial estoppel, as you know, is a doctrine of judicial economy. And if an issue of substance and consequence is litigated, it can't be litigated again. The defendant's trial attorney in Ferris-Thompson's way, one, urged for that verdict of a directed verdict based on 1.5. Now, what is the standard of review in this case? Let's not lose sight of the fact that the order being appealed from is a dismissal order. We were thrown out of court with prejudice based on our contract not complying with Rule 1.5. The standard is no set of facts viewed in the light most favorable to the plaintiff would entitle plaintiff to recovery. There are two ways to permissibly divide fees under Rule 1.5. One is based on proportionate services rendered. The other is in a referral-only situation if both law firms assume joint financial responsibility. Here the pleadings allege that the plaintiff was to render a proportion of services, including assisting with initial interviews, translation services, document preparation, client contact, and communication. Answering a client's questions about what's the status of my case, where are my TTD checks, why am I being sent back to work when I'm still hurt? All of the client contact that we allege and that we provided as part of this joint representation is arguably more time consuming than the defendant would take presenting the matter before the Workers' Compensation Commission. At 812, the appendix of the plaintiff's brief at the very top of the page is a confirmation letter which accompanied every contract. There are 10 contracts which were alleged in the plaintiff's complaint and those contracts were accompanied by a confirmation letter which was authored and signed by the defendant which states in his own words, legal fees in this matter will be shared by our offices based upon our respective contributions in the handling of this case. That language describes a proportionate services fee division, not a referral only fee division. The typical referral fee is one lawyer calling another saying, could you please handle this case? I'm not capable of handling it. I'm not competent to handle it. The relationship between the parties in this case went far beyond that. As the pleadings allege, we provided a sundry of additional services beyond merely calling the attorney and saying, will you accept this client? The defendant raised a judicial estoppel argument. The judicial estoppel argument is based upon a false premise. The defendant argued, quote, plaintiff has taken the position that the agreements at issue were for referral only in Ferris Thompson and Dwight 1. The referral only characterization is a Rule 1.5 label which was not at issue in the first case. The only issue in the first case is whether the circuit court had jurisdiction. The defendant's argument of judicial estoppel is misleading and simply not true. The facts alleged in Ferris Thompson and Dwight 1 are the same exact facts alleged in this case. The relevance of the facts and how they pertain to the issues at hand changed. For example, this court focused on whether or not Ferris Thompson and Dwight was active in the industrial, excuse me, the Workers' Compensation Commission in the first case. That fact does not come into play and is of no relevance in the 1.5 ethical rule analysis that's before the court now. So judicial estoppel is based on a party taking two positions factually inconsistent. The facts are the same here. There are no alternative facts being alleged here. There's no such thing. It's a non-sequitur. So what Williston on contracts calls the joint financial responsibility is an implied condition in law. It's implied in every referral-only agreement. And as Williston defined an implied condition, or excuse me, a condition implied in law, this condition has nothing to do with the expressed intentions of the party but is an imposed by the courts. So it's implicit in every agreement. And you don't have to believe me. Again, the defendant's attorney in Ferris Thompson and Dwight won argued that. He argued that it's implied in every referral fee agreement, 1.5, and he argued that we failed to comply with 1.5, and therefore the verdict should be directed. So the defendant's own attorney recognized that 1.5 is implied in every referral fee agreement. To quote him, he said, quote, whatever the contract was between those parties, by operation of Illinois law, these provisions of Rule 1.5 were incorporated into the contract. And I cited the transcript at A65 in the appellate brief. So you don't have to believe me. The defendant himself acknowledged that 1.5, or excuse me, joint financial responsibility is implied. Itlow wrote an amicus brief in this case in support of the plaintiff's position. And it was argued in the amicus brief that if you look at the plaintiff's contract in this case, joint financial responsibility is conveyed by the very first line of the contract. The first line says, I blank. So for example, at A25 is an example of one of the ten contracts we've attached to the complaint. In this case, at A25, Mr. Aguardo-Sawan, I, Aguardo-Sawan, hereby retain and employ the law offices of Ferris-Thompson & Zweig to represent me in my claim. The contract goes on to say, I understand and agree that Ferris-Thompson & Zweig has contracted with the defendant to pursue this worker's compensation claim on my behalf. So by the language, retaining and employing Ferris-Thompson & Zweig, the client clearly sees that we are assuming responsibility for representation in the case. Ferris-Thompson & Zweig is being employed as well as the defendant to pursue the worker's comp aspect of this contract. So the Itlow brief argues that as long as the joint financial responsibility concept is conveyed, here we, in our firms, being identified, that satisfies Rule 1.5. This Court presumably agreed to hear this case based upon the conflict of the districts. We have the 1st District Foreman case, which held joint financial responsibility must be expressed. If you examine both cases, the 2nd District opinion of Ferris-Thompson & Zweig starts with reciting the standard for reviewing a Supreme Court rule as enunciated in the Santiago case. You look to the plain and ordinary language of the rule. The 2nd District cautioned against judicially amending Rule 1.5. They examined the history of the rule. They applied the last antecedent rule of construction and discussed the committee comments to the rule. Foreman, on the other hand, was focusing on whether 1.5 demands substantial compliance or strict compliance and, of course, concluded strict compliance was required and then in conclusory language said that joint financial responsibility, along with the division of fees and the identification of the attorneys, must be in writing. Foreman did not offer any supporting reasoning specifically why joint financial responsibility must be in writing. For all these reasons, I respectfully request the Court follow Ferris-Thompson & Zweig's 2nd District opinion as opposed to the Foreman opinion. Thank you. Thank you, Mr. Ferris. Rebuttal. Thank you, Your Honors. May I please the Court very briefly? Ms. Hamilton, Mr. Ferris is right, right? Foreman did decide another question related to 1.5e and really, wouldn't you indicate it's really like textbook dicta in that sense? The statement was made in the absence of any legal analysis in what would be the potential conflict between the two districts, right? There wasn't really any legal analysis on it. How helpful is Foreman to our decision? You know, Judge, I think Foreman is very helpful because I think that it's not just dicta. It's also how do we want attorneys in Illinois to practice? How do we want the rule to govern relationships between referring attorneys, attorneys receiving the referral, and those clients who are going to be receiving the benefit of the representation? I think that Foreman explains why a reading of the rule that benefits the client above all is a better interpretation. As to the first time that this case is here, which is obviously long before I was involved, was strictly a jurisdictional issue. There was no dispute over the interpretation of Rule 1.5. That was not an issue that was right before this Court. I think it would be unduly burdensome for this Court to have to shoulder the responsibility of preemptively resolving any issue that may or may not arise in a contract dispute when a case is before it purely on jurisdictional grounds. But that does lead me into my judicial estoppel argument, which is that it seems a little unfair for the plaintiff to take a position in the first case that jurisdiction in this Court has to be appropriate and jurisdiction in the Workers' Compensation Commission is inappropriate because these fees were strictly referral fee agreements. And that was actually something that this Court wrote in its own opinion in Ferris 1. That it reviewed the contracts, it reviewed the facts of the case, it reviewed the transcripts in Ferris 1 and found that these were referral fee agreements. That the plaintiff's involvement in the Workers' Compensation was so minimal that that's why jurisdiction in the Workers' Compensation Commission would be inappropriate. So I think it's a little unfair for the plaintiff to now take the position, well wait, we were referral only for purposes of jurisdiction, but now that we're here and having to comply with Rule 1.5, now we're proportionate services. I don't think that's appropriate. I think the facts demonstrate that these are referral fee agreements. The plaintiff would bring in clients and then refer them to my client to handle the Workers' Comp side of everything. And I believe that strict compliance with Rule 1.5 is appropriate. Additionally, I did address the fact that if this Court were to find that they were proportionate services fee agreement, a 45 percent fee for the services that the plaintiff allegedly provided, which was doing the initial client interviews, would not be an appropriate fee under Rule 1.5 anyway. In addressing the amicus brief, I think the amicus brief filed by ITLA actually demonstrated all of the problems in the plaintiff's brief. While ITLA came off in their brief in saying that they believe that the contracts in this case did substantially comply with the rule, they did also point out some serious flaws in the plaintiff's brief, saying that there was this misunderstanding that by referring a case to another attorney and by at the same time receiving a fee, there was somehow no responsibility to the client to make sure the case was handled appropriately. And that misunderstanding, I think, is highlighted on page 15 of the plaintiff's brief. And that's something that this Court can take this opportunity to clarify and to let all the attorneys practicing in Illinois understand and know that if you're going to receive a fee for referring a case, with that comes responsibility, with that comes duties to the client and actions that you must take to protect that client's interests if you want to receive that monetary gain. In reviewing the comments to the rule, when the rule changed from the 1990 version to the 2010 version, and I'll never forget this because I was actually in law school when they were doing the change and I was studying for the MPRE, and then all of a sudden I had to study for something different. But they kept telling us, focus on the comments and focus on the history. Focus on why these changes are being made. What is the purpose of some of these changes? And looking at the red line version of the 1990 rule and the 2010 rule, I think it really explains that clarity and disclosure and being up front and being clear with the client is really of the utmost importance. Comment 7 to Rule 1.5 actually talks about a referral fee situation where the case is being referred out to trial. And it kind of harkens back to England with the solicitors and the barristers and you would refer a case out for trial. I don't think that's the type of situation we have here. That's not what's going on currently in the state of Illinois. And I think that that's something that perhaps needs to be clarified and rectified. And that if you are going to sign up a client and immediately refer them out to someone else but retain a fee or get some money, make sure that you're placing that client's interest first and that you are actually doing work on the file. You are monitoring the case. You are taking action to protect that client's interest if you want to receive that fee. You have to earn it. And I think that that's something that part of earning it is shouldering that risk and letting the client know, hey, I'm on the hook too. I know you're going to be dealing with this person and that this person is going to be your day-to-day person for handling the case in the Workers' Compensation Commission. But at the end of the day, I am responsible too. I am standing here to answer for that case as your attorney. And I think that that's it just makes sense for Illinois public policy. I think it makes sense for the way that we practice law in this state. In conclusion, Your Honors, I would just ask that you reverse the finding of the Second District and affirm the dismissal by the trial court. Thank you very much. Thank you. Case number 121297, Paris Thompson Zweig v. Esposito will be taken under advisement as agenda number 8. Ms. Hamilton, Mr. Paris, thank you for your arguments today and your excuse.